IN RE DISQUALIFICATION OF NICELY.

O'MALLEY *v*. O'MALLEY.

[Cite as *In re Disqualification of Nicely,* 135 Ohio St.3d 1237,

2012-Ohio-6290.]

*Judges—Affidavits of disqualification—R.C. 2701.03—Alleged improper ex parte communications—Alleged overburdened case load—Alleged violation of mandatory time guidelines for domestic relations cases—Request for removal denied—No basis established warranting disqualification.*

(No. 12-AP-115—Decided November 26, 2012.)

ON AFFIDAVIT OF DISQUALIFICATION in Cuyahoga County Court of Common

Pleas, Domestic Relations Division, Case No. DR-04-299141.

_____

**O'CONNOR, C.J.**

**{¶ 1}** Plaintiff Vicki M. O'Malley ("O'Malley") and her attorney, Colleen Mary O'Toole, have filed affidavits with the clerk of this court under R.C. 2701.03 seeking to disqualify Judge Judith A. Nicely, a retired judge sitting by assignment in case No. DR-04-299141, now pending on defendant Patrick O'Malley's contempt motion, in the Domestic Relations Division of the Court of Common Pleas of Cuyahoga County. Michael Bassett, O'Malley's former counsel, and Joan Meier, the Executive Director of the Domestic Violence Legal Empowerment and Appeals Project, have also filed affidavits to support O'Malley's allegations.

**{¶ 2}** This is the third affidavit filed by or on behalf of O'Malley in the underlying divorce and custody case. In 2004, Chief Justice Moyer granted O'Malley's first affidavit and disqualified all Cuyahoga County judges from hearing the case because, at that time, defendant Patrick O'Malley was a county

officeholder with significant personal and professional connections to many of the judges. *See In re Disqualification of Celebrezze*, 105 Ohio St.3d 1241, 2004-Ohio-7360, 826 N.E.2d 301. O'Malley's second affidavit of disqualification, which was filed against Judge Nicely, was denied by entry on March 24, 2011. *See In re Disqualification of Nicely,* case No. 11-AP-008.

{¶ 3} In the present affidavit, O'Malley and O'Toole allege that Judge Nicely's conduct has been "grossly prejudicial" to O'Malley. Specifically, they allege that Judge Nicely has engaged in improper ex parte communications, failed to report suspected child abuse, and refused to appoint separate counsel for the O'Malley children. Affiants also allege that Judge Nicely is too burdened with case assignments to preside over this complex litigation and that she has violated the mandatory time guidelines for domestic relations cases.

{¶ 4} Judge Nicely has responded in writing to the concerns raised in the affidavits. Judge Nicely denies that she has engaged in any improper ex parte communications, and she further asserts that the affidavits are a direct result of O'Malley's dissatisfaction with the court's July 2012 final order designating Patrick O'Malley as the residential parent and legal custodian of the two O'Malley children.

{¶ 5} For the reasons explained below, no basis has been established to order the disqualification of Judge Nicely.

## Waiver

{¶ 6} An affidavit of disqualification must be filed "as soon as possible after the incident giving rise to the claim of bias and prejudice occurred," and failure to do so may result in waiver of the objection, especially when "the facts underlying the objection have been known to the party for some time." *In re Disqualification of O'Grady*, 77 Ohio St.3d 1240, 1241, 674 N.E.2d 353 (1996). Here, most of the events giving rise to the affidavits occurred months, or even years, ago. Specifically, O'Malley alleges that Judge Nicely engaged in ex parte

communications with Joan Meier at a September 2011 legal seminar and with two court-appointed psychologists in April or early May 2012. O'Malley further claims that in January 2010, her children informed Judge Nicely that they were abused by Patrick O'Malley. O'Malley moved to appoint separate counsel for the children; the judge refused. And affiants allege that Judge Nicely violated the time guidelines for domestic relations cases because the trial on O'Malley's 2008 motion to modify parental rights was not concluded until February 2012 and the final order was not issued until July 20, 2012.

{¶ 7} Yet O'Malley and O'Toole did not file their affidavits until October 1, 2012—over two months after the court's final order and exactly eight days before the scheduled hearing on Patrick O'Malley's contempt motion. If affiants believed that Judge Nicely's conduct demonstrated bias or prejudice—especially the conduct allegedly occurring in January 2010 or September 2011—they should have timely sought disqualification, i.e., "as soon as possible after the incident giving rise to the claim of bias and prejudice occurred." *O'Grady*, 77 Ohio St.3d at 1241, 674 N.E.2d 353. As nothing in the record justifies the delay in filing the affidavits of disqualification, affiants have waived the right to disqualify Judge Nicely based on these allegations. *See, e.g.*, *In re Disqualification of Corrigan*, 91 Ohio St.3d 1210, 1210-1211, 741 N.E.2d 137 (2000) (affiant waived objections to judge when incidents giving rise to claim of bias occurred "several months prior to the filing of the affidavit" and affiant filed "less than three weeks before the scheduled trial"); *In re Disqualification of Belskis*, 74 Ohio St.3d 1252, 1253, 657 N.E.2d 1355 (1993) (denying affidavit when incident giving rise to claim of bias had been known for "some months prior" to filing of affidavit but affiant waited "until a few days before a scheduled hearing").

**Merits of the Affidavits of Disqualification**

{¶ 8}  Even if the affiants had not waived most of their objections, their claims of bias and prejudice are without merit.  As an initial matter, it is well settled that "absent extraordinary circumstances, a judge will not be subject to disqualification after having presided over lengthy proceedings in a pending case."  *In re Disqualification of Celebrezze*, 94 Ohio St.3d 1228, 1229, 763 N.E.2d 598 (2001).  When an affidavit is filed after commencement of a trial and after the presentation of evidence has begun, a judge should be disqualified only when the record "clearly and unquestionably demonstrates a 'fixed anticipatory judgment' that undermines the absolute confidence of the public in the fairness and integrity of the proceedings."  *In re Disqualification of Kate*, 88 Ohio St.3d 1208, 1209, 723 N.E.2d 1098 (1999), quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 469, 132 N.E.2d 191 (1956).  Judge Nicely was assigned to this case in 2004.  She presided over a 15-day trial that included evidence from 33 individuals and resulted in an 83-page final order.  Given the length of these proceedings and Judge Nicely's significant involvement, disqualification is warranted only under "extraordinary circumstances" that clearly show a "fixed anticipatory judgment."  As explained below, affiants have not met this heightened standard.

*Alleged ex parte communications*

{¶ 9}  Affiants allege that Judge Nicely engaged in four improper ex parte communications.  First, affiants claim that Judge Nicely communicated with Joan Meier at a September 2011 legal seminar about the qualifications of Dr. Joyanna Silberg, one of O'Malley's proposed expert witnesses.  Affiants allege that after the communication, Judge Nicely acted on Meier's recommendation and qualified Dr. Silberg as an expert.  This conduct, according to affiants, violated Jud.Cond.R. 2.9, which prohibits a judge from engaging in ex parte communications and from independently investigating the facts of a case.

{¶ 10} Judge Nicely denies discussing Dr. Silberg's qualifications with Meier, and she denies that her encounter with Meier had any influence on her decision to qualify the expert. But even if affiants had established that Judge Nicely violated her ethical duties, in affidavit-of-disqualification proceedings, the question is not whether the judge has violated the Code of Judicial Conduct, but whether the ex parte communication demonstrates bias or prejudice on the part of the judge. *In re Disqualification of Saffold*, 94 Ohio St.3d 1238, 1239, 763 N.E.2d 605 (2001). Affiants have failed to explain how Judge Nicely's alleged communication, which they concede resulted in a favorable decision for O'Malley, demonstrates bias or prejudice against O'Malley. Under these circumstances, affiants' allegation is not well taken.

{¶ 11} Second, affiants claim that Judge Nicely engaged in improper communications with two court-appointed psychologists. The psychologists allegedly told O'Malley that Judge Nicely was "not happy" with the parties, which, according to O'Malley, is evidence of an ex parte communication. Affiants also point to comments in Judge Nicely's final order from which they infer that the psychologists were the source of the comments, and therefore another improper communication occurred. In response, Judge Nicely admits that she communicated with the psychologists about administrative matters in the underlying case, but she denies having any improper or substantive communication with them. As to how the psychologists could conclude that Judge Nicely was "not happy" with the parties, Judge Nicely explains that her interim order, which she gave to the psychologists, criticizes both Patrick and Vicki O'Malley's conduct and could give any reasonable reader a sufficient basis to conclude that the judge was "not happy" with the parties. Further, Judge Nicely traces the comments in her final order to information directly received from O'Malley at a May 23, 2012 hearing—not from the psychologists.

{¶ 12} On this record, disqualification is not warranted. An alleged ex parte communication constitutes grounds for disqualification where there is "proof that the communication * * * addressed substantive matters in the pending case." *In re Disqualification of Calabrese*, 100 Ohio St.3d 1224, 2002-Ohio-7475, 798 N.E.2d 10, ¶ 2. The allegations must be substantiated and consist of something more than hearsay or speculation. *In re Disqualification of Floyd*, 101 Ohio St.3d 1215, 2003-Ohio-7354, 803 N.E.2d 816, ¶ 7. Affiants have failed to satisfy either test. Affiants simply speculate, without providing any actual evidence to support this speculation, that Judge Nicely engaged in substantive communications with the psychologists. Without more, removal is not necessary. *See Calabrese* at ¶ 2 (disqualification not warranted when affiant could not substantiate allegation that encounter between judge and opposing counsel immediately prior to pretrial conference involved ex parte communication about underlying case).

{¶ 13} The same reasoning applies to affiants' two remaining claims of improper ex parte communications. Affiants speculate that Judge Nicely engaged in an ex parte communication with Patrick O'Malley because in August 2012, he told hospital staff that Judge Nicely was "made fully aware" of the O'Malley children's hospitalization. Similarly, affiant O'Toole infers that Judge Nicely engaged in ex parte communications with hospital legal staff because the staff told her that they had spoken to Judge Nicely's law clerk about the children's treatment and the court's custody order. In response, Judge Nicely flatly denies having any ex parte communication with either Patrick O'Malley or the hospital legal staff. She acknowledges that the domestic relations court received a telephone call from the hospital staff expressing concerns about releasing the children to Patrick O'Malley, and she acknowledges that a staff attorney who received the phone call told the hospital to follow the court's final custody order.

**{¶ 14}** Again, affiants' speculation here is insufficient to mandate Judge Nicely's disqualification, especially in light of the judge's affirmative denial of any improper communication. *See, e.g.*, *In re Disqualification of Cacioppo*, 77 Ohio St.3d 1245, 674 N.E.2d 356 (1996) ("The hearsay allegations of the affiant will not stand in the face of an affirmative denial by the trial judge of substantive *ex parte* contacts"). Affiants' claim regarding the hospital legal staff's communication is based on hearsay, and it appears that the communication did not involve the merits of the case, because the record shows only that the hospital was told to follow the court's final order. "A judge will not be disqualified based on vague and unsubstantiated claims of ex parte communications." *In re Disqualification of Fuerst*, 94 Ohio St.3d 1237, 1238, 763 N.E.2d 604 (2001).

*Alleged failure to report child abuse and to appoint counsel for the children*

**{¶ 15}** Affiants next allege that Judge Nicely should be removed because she failed to report suspected child abuse, as R.C. 2151.421 requires for all attorneys, and because she did not appoint separate counsel for the O'Malley children, in violation of their constitutional rights, the Code of Judicial Conduct, and the Rules of Superintendence. In response, Judge Nicely states that the suspected abuse had already been reported to the appropriate authorities. In fact, the court held an evidentiary hearing in which police officers, doctors, and social workers testified about the suspected abuse. In addition, Judge Nicely asserts that the issue of whether to appoint counsel for the children is on appeal.

**{¶ 16}** Affidavit-of-disqualification proceedings are not the appropriate forum to determine whether a judge has complied with a statute, the Code of Judicial Conduct, or court rules. These proceedings are narrow in scope and are " 'limited to determining whether a judge in a pending case has a bias, prejudice, or other disqualifying interest that mandates the judge's disqualification from that case.' " *In re Disqualification of Griffin*, 101 Ohio St.3d 1219, 2003-Ohio-7356, 803 N.E.2d 820, ¶ 9, quoting *Kate*, 88 Ohio St.3d at 1209, 723 N.E.2d 1098.

Thus, affiants cannot litigate here whether Judge Nicely violated her statutory duties under R.C. 2151.421 or whether she violated the O'Malley children's constitutional rights. Further, affiants' disagreement or dissatisfaction with Judge Nicely's refusal to appoint separate counsel for the children, even if the decision is erroneous, is not grounds for disqualification. *In re Disqualification of Floyd*, 101 Ohio St.3d 1217, 2003-Ohio-7351, 803 N.E.2d 818, ¶ 4. The remedy for these and other legal claims, if any, lies on appeal, not through the filing of an affidavit of disqualification. *In re Disqualification of Russo*, 110 Ohio St.3d 1208, 2005-Ohio-7146, 850 N.E.2d 713, ¶ 6.

*Alleged failure to follow trial guidelines*

{¶ 17} In their final allegation, affiants complain that Judge Nicely is years beyond the mandatory time guidelines for disposition of domestic relations cases and that she is "carrying too large a case load to continue with this involved, conflicted, and ongoing matter." As evidence, affiants submitted a list of Judge Nicely's case assignments, and they point to the fact that it took Judge Nicely almost four years to decide postdecree motions filed in 2008 and that Judge Nicely could hold consecutive-day hearings on only three occasions during the 15-day trial. Judge Nicely did not specifically respond to this allegation. However, the trial court's final order sets forth several reasons for the prolonged nature of the case, including Patrick O'Malley's incarceration, the fact that O'Malley has had multiple successive attorneys, the judge's, the attorneys', and the guardian ad litem's "busy schedules," and the previous affidavit of disqualification filed in 2011.

{¶ 18} The trial court's delay in deciding the parents' motions to modify parental rights—and the prolonged period of the trial—is a matter for concern. But similar to the other allegations in this proceeding, affiants have failed to demonstrate that the court's delay is the product of bias or prejudice against O'Malley. Thus, the delay itself is not a reason to remove Judge Nicely. *See e.g.,*

*In re Disqualification of Hall*, 94 Ohio St.3d 1230, 763 N.E.2d 599 (2001) ("While a delay in ruling on objections to the magistrate's decision may have adverse consequences to the defendant, affiant has failed to present any evidence that the delay is the product of bias or prejudice on the part of [the judge] toward her or her client").

{¶ 19} Moreover, the facts here present a weak case for the notion that a judge's "overburdened" docket is a disqualifying interest under R.C. 2701.03. Affiants complained about Judge Nicely's allegedly busy docket after the court's final order, which was adverse to O'Malley, and only eight days before the hearing on Patrick O'Malley's contempt motion. Far from proving bias, prejudice, or disqualifying interest, the affidavits appear to have been filed to obtain a delay of the scheduled hearing. The statutory process for seeking the disqualification of a trial judge is "to be used exclusively to determine the existence of bias, prejudice, or other disqualifying interest and not as a tactic of delay." *In re Disqualification of Lorig*, 75 Ohio St.3d 1212, 664 N.E.2d 943 (1996). Further, parties are not permitted to continue to participate in an action once they discover what they believe is a biased attitude on the part of the judge "and then avoid an adverse ruling by belatedly raising the issue of disqualification." *In re Disqualification of Murphy*, 36 Ohio St.3d 605, 522 N.E.2d 459 (1988). Affiants, therefore, have failed to establish that Judge Nicely's schedule warrants disqualification under R.C. 2701.03.

## Conclusion

{¶ 20} "The statutory right to seek disqualification of a judge is an extraordinary remedy." *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. "A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *Id.* at 1241-1242. Those presumptions have not been overcome in this case. Moreover, the record does not support a finding of

"extraordinary circumstances," which an affiant is required to establish after a judge has participated in lengthy trial proceedings.  *See Celebrezze*, 94 Ohio St.3d at 1229, 763 N.E.2d 598.

{¶ 21} Accordingly, for the reasons stated above, the affidavits of disqualification are denied.  The case may proceed before Judge Nicely.

———————————